IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

UNITED STATES OF AMERICA    )
                            )        CRIMINAL ACTION NO.
    v.                      )          2:25cr499-MHT
                            )              (WO)
KAMRYN HARTLEY             )

OPINION AND ORDER

Defendant Kamryn Hartley pleaded guilty to one count of illegal possession of a machinegun, in violation of 18 U.S.C. § 922(o)(1).  At the time he committed the offense, he was 18 years old.  The Guidelines calculations resulted in an offense level of 19 and a criminal-history score of I, yielding a recommended sentence of 30 to 37 months' imprisonment. Hartley has moved for a downward variance.  Because of several significant mitigating factors--foremost among them his youth--the court will grant the motion for a downward variance and, subject to further statements from Hartley, his attorney, and the government in open court, sentence Hartley to a non-carceral sentence,

albeit with six months of home detention and other conditions of supervision tailored to his youth.

## I.   BACKGROUND

On July 9, 2025, federal agents executed a search warrant at the house where Hartley lived with his mother and grandmother.  The search warrant was related to recent burglaries of Pike Tactical and Walter Craig's, two federally licensed firearms dealers. Although agents did not recover any of the stolen firearms, they located a gun with an attached machinegun conversion device under Hartley's mattress. Hartley was arrested for illegal possession of a machinegun in violation of 18 U.S.C. § 922(o)(1).  He was 18 years old.  Agents later identified and arrested the two people responsible for the burglaries, neither of which was Hartley.

On July 24, 2025, following a detention hearing, a United States Magistrate Judge ordered that Hartley be released on home detention pending trial.  *See* Order

Denying Mot. for Detention (Doc. 13) at 6.  In doing so, the magistrate judge emphasized the fact that Hartley was young and impressionable, and found that any potential threat to the community could be sufficiently managed with electronic monitoring and support from Hartley's parents, especially his father. *Id.*  This court affirmed that decision and added two more conditions to the terms of Hartley's pretrial supervision: that Hartley either find employment or enroll in school, and that he undergo a psychological assessment.  *See United States v. Hartley*, No. 2:25mj274-MHT, 2025 WL 2164200, at *3 (M.D. Ala. July 30, 2025) (Thompson, J.).  Hartley pleaded guilty on October 29, 2025.

Sentencing began on February 24, 2026, very shortly after Hartley turned 19.  However, the sentencing was continued because his counsel failed to obtain a psychological assessment as the court had previously ordered.  Thereafter, defense counsel arranged for

Hartley to be examined by Dr. Holly Kaufman, a forensic psychologist, who submitted her report on April 14. Sentencing resumed on April 16, and the court heard more from the parties.  However, after giving Hartley an opportunity to make a statement and recessing to deliberate on an appropriate sentence, the court decided to continue sentencing again so as to allow more time for the court to consider the somewhat special circumstances presented and allow the court to set forth its reasons in writing.

Having now had adequate time to consider the issues, including, in particular, Hartley's motion for a downward variance, the court now announces the proposed sentence (that is, one subject to further statements from Hartley, his attorney, and the government in open court) and writes to explain its reasoning.

## II.    STANDARD

Although district courts are no longer bound to follow the Sentencing Guidelines after *United States v. Booker,* 543 U.S. 220 (2005), they still must consult the Guidelines and take them into account when sentencing.    *See United States v. Crawford,* 407 F.3d 1174, 1178 (11th Cir. 2005); *see also* 18 U.S.C. §§ 3553(a)(4) & (5).    After calculating the correct Guidelines range, the court may impose a more severe or more lenient sentence, as long as the final sentence is reasonable.    *See Crawford,* 407 F.3d at 1179.    The factors set forth in § 3553(a) continue to guide sentencing and inform whether a sentence is reasonable.[1]

---

1. Section 3553(a) requires courts to consider:

"(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law,

*See Booker,* 543 U.S. at 261–62.    The primary goal of sentencing is to impose a sentence that is sufficient, but not greater than necessary, to punish the offender, protect the public from further crimes by the defendant, rehabilitate the defendant, and deter the

---

and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established [by the sentencing Guidelines] ...

(5) any pertinent policy statement [by the Sentencing Commission] ...

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense."

6

defendant and other people from committing similar crimes. *See* § 3553(a).

## III.  DISCUSSION

Under the Sentencing Guidelines, Hartley's offense level is 19, and his criminal history score is I. That results in a recommended sentence of 30 to 37 months' imprisonment. For the following reasons, the court varies down to a sentence of non-incarceration, but with six months of home detention and other conditions of supervision tailored to Hartley's youth.

### A.   Calibration of Guideline 2K2.1(b)(7)(B) Sentencing Enhancement

The court first addresses an enhancement under Sentencing Guideline 2K2.1(b)(7)(B). This guideline adds four levels to the base offense level "if the defendant ... used or possessed any firearm or ammunition in connection with another felony offense." U.S. Sent'g Guidelines (U.S.S.G.) § 2K2.1(b)(7)(B)

(2025).   Here, Hartley possessed a stolen firearm in connection with the attempted sale of that firearm.[2]

This court has previously described Guideline 2K2.1(b)(7)(B) as a "blunt and unwieldly tool" that "unfairly groups [nonviolent defendants] with defendants who threaten or carry out violence using a firearm." *United States v. Conway*, No. 2:19cr61-MHT, 2019 WL 7161326, at *3 (M.D. Ala. Dec. 23, 2019) (Thompson, J.).[3]   Accordingly, this court sometimes "use[s] a variance to calibrate the size of the enhancement according to the actual increase in

---

2. The U.S. Probation Department proposed two possible felonies that Hartley possessed a firearm 'in connection with': possession/distribution of marijuana and attempting to sell a stolen firearm.   The court does not credit the first option because there is insufficient evidence that Hartley engaged in a felony-level marijuana offense.

3. *Conway* cites Guideline 2K2.1(b)(6)(B) instead of Guideline 2K2.1(b)(7)(B) because prior to November 1, 2025, the in-connection-with enhancement was located at paragraph six instead of paragraph seven of Guideline 2K2.1(b).   The numbering changed after the Commission added a new special offense characteristic at paragraph five.   *See* U.S.S.G. app. C, Am. 834 at 299–300 (2025).

dangerousness, risk of violence, and daring--the harms purportedly combatted by the enhancement--caused by the defendant's firearm possession." *Id.* For example, in *Conway*, this court used a variance of three levels to calibrate the four-level enhancement down to a one-level enhancement because the defendant used a gun in an entirely nonviolent manner--he used it as an item of value to barter for sale of drugs. *See id.*

Hartley's 'use' here was similarly nonviolent. The United States Probation Department has asserted that law enforcement recovered messages between four individuals, one of whom was Hartley, that appeared to discuss selling one of the firearms stolen from Pike Tactical. The court was provided with no evidence of Hartley's role in the attempted sale. Moreover, there was no evidence that Hartley threatened violence in any manner related to the sale. Rather, his 'use' of the firearm appears to be limited to posing with it in a picture and being present in sale discussions. Based

9

on the lack of evidence that Hartley used the firearm in a violent manner or played a significant role in the sale, the court applies a three-level downward variance to calibrate the severity of the enhancement to the relative severity of Hartley's conduct.  Hartley's offense level therefore decreases from 19 to 16, yielding a recommended range of incarceration of 21 to 27 months.

B. History and Characteristics of the Defendant

The court now turns to Hartley's personal history and characteristics, specifically: his age, his adverse childhood experiences (ACEs), his employment and educational achievements, his lack of criminal history, his lack of violent conduct.

*Age*.  The United States Sentencing Commission recognizes that age, including youth at the time of the offense, can warrant a below-guidelines sentence.

U.S.S.G. § 5H1.1 (2024).[4]   "[Y]outhful people generally are more impulsive, risk-seeking, and susceptible to outside influence as their brains continue to develop into young adulthood."   *Id.*   They are also "more amenable to rehabilitation."   *Id.*   The Supreme Court agrees with these observations.   *See Eddings v. Oklahoma*, 455 U.S. 104, 115 (1982) ("But youth is more than a chronological fact.   It is a time and condition of life when a person may be most susceptible to influence and to psychological damage."); *Graham v. Florida*, 560 U.S. 48, 68 (2010) ("Juveniles are more capable of change than are adults."); *see also Gall v.*

---

4. Although the policy statement contained in Guideline 5H1.1 no longer appears in the 2025 Guidelines Manual, this is not because the Commission disapproved of the content, but rather because the Commission recognized courts used the policy statement to guide decisions about variances rather than departures. *See* U.S.S.G. app. C, Am. 836 at 423 (2025) ("It is the Commission's intent that judges who would have relied upon facts previously identified as a basis for a departure will continue to have the authority to rely upon such facts, or any other relevant factors, to impose a sentence outside of the applicable guideline range as a variance under 18 U.S.C. § 3553(a).").

*United States*, 552 U.S. 38, 58 (2007) (upholding district court's consideration of the defendant's "immaturity at the time of the offense as a mitigating factor, and his later behavior as a sign that he had matured and would not engage in such impetuous and ill-considered conduct in the future."). For those reasons, and because "age-appropriate interventions and other protective factors may promote desistance from crime," the Commission has noted that in some cases, it may be appropriate for courts to "consider whether a form of punishment other than imprisonment might be sufficient to meet the purposes of sentencing." § 5H1.1.

This is one such case where an alternative to imprisonment is warranted. Hartley was 18 at the time of the offense, which is extraordinarily young for a federal defendant. *See Inmate Age*, Federal Bureau of Prisons (last updated Apr. 26, 2026), https://www.bop.gov/about/statistics/statistics_inmate_

age.jsp (noting that people ages 18-21 account for less than one percent of the entire Bureau of Prisons inmate population). Dr. Kaufman concluded that Hartley's youth and underdeveloped brain may have significantly contributed to his conduct. As someone on the edge of being a minor and an adult, it is likely that Hartley did not appreciate the physical and legal dangers of possessing a machinegun the same way this court, or even an adult ten years older than Hartley, would have. It also appears from the record that Hartley's decisions were influenced by people who were older than he and who possessed guns. This does not mean Hartley is not responsible for his actions. However, the fact he likely lacked the capacity to appreciate fully the consequences of his conduct suggests that a reduced sentence is more appropriate than a lengthy one.

Additionally, Hartley has demonstrated extraordinary rehabilitative potential. Not only is he employed full-time, he is also enrolled in community

college.      Education    and    employment    are    key interventions    for    reducing    recidivism.    *See Prison Reform: Reducing Recidivism by Strengthening the Federal Bureau of Prisons*, U.S. Dep't of Just. Archives (last        visited        Apr.        30,        2026), https://www.justice.gov/archives/prison-reform.    A term of  incarceration  would  disrupt  Hartley's  educational and  employment  progress.    Incarceration  also  risks disrupting  Hartley's  civic  progress;  imprisonment  in  a federal  facility  will  bring  Hartley,  who  is  still  young and  impressionable,  into  close  proximity  with  people who  are  older  and  have  longer  criminal  histories.    Such an    environment    could    have    a    negative    impact    on Hartley's    outlook    for    his    future.    A  non-carceral punishment  keeps  Hartley  on  track  toward  becoming  a productive  member  of  society,  thereby  protecting  the public from further potential crimes by the defendant.

*Adverse Childhood Experiences*.    Research shows that adverse  childhood  experiences  (ACEs)--traumatic  events

14

that occur in an individual's life before age 18--can "powerfully affect children's brain development and life outcomes." *United States v. Carter*, 506 F. Supp. 3d 1204, 1209 (M.D. Ala. 2020) (Thompson, J.). The neurological effects of ACEs impact decision-making abilities, and the number of ACEs a person experiences correlates with increased involvement in criminal justice systems. *See id.*

Dr. Kaufman evaluated Hartley and identified six ACEs. The most significant ones, and the ones most relevant to Hartley's conduct here, were the loss of Hartley's best friend to gun violence and Hartley's own victimization by gun violence. When Hartley was 15, someone shot his best friend, who was also 15 years old at the time, in the head. Hartley was deeply affected. He began exhibiting symptoms of depression and anxiety and dropped out of public school. Hartley enrolled in a homeschool program and completed his diploma remotely because being at school made him paranoid and unable to

concentrate.   Then, at age 17, when Hartley was asleep in the family home, someone opened fire on the house. One of the bullets went through Hartley's foot. Consequently, Hartley has trouble feeling safe and falling asleep.   Dr. Kaufman reported that Hartley meets the diagnostic criteria for post-traumatic stress disorder (PTSD).   She concluded that his "trauma history and mental health symptoms contributed to his participation in the instant offense" because "[h]e felt he needed a gun for protection."   Psych. Assessment (Doc. 97-1) at 9.   The court does not endorse Hartley's line of reasoning.   However, in a policy statement, the Commission has expressly recognized that ACEs can play a role in contributing to criminal involvement, and, in particular, that of a youth.   The Commission explained that, "Certain risk factors may affect a youthful individual's development into the mid-20's and contribute to involvement in criminal justice systems, including ... adverse

16

childhood experiences". § 5H.1.1. Here, the tight nexus among Hartley's ACEs, his diagnoses, and his conduct demonstrate that a variance on this basis is warranted.

*Employment and Educational Achievements*. Hartley has shown impressive dedication to his education and career. He works Monday through Friday from 7:30 a.m. to 2:30 p.m., then attends classes at a community college Monday through Thursday from 4:40 p.m. to 7:30 p.m., where he studies welding. While the court made it a condition of pretrial release that Hartley either work or enroll in school, Hartley went above and beyond the court's order by choosing to do both. He has resumed the path toward a better education and a better job.

*Lack of Criminal History*. Significantly, this is Hartley's first criminal charge. According to the records of the Probation Department, it is his first arrest. The fact that Hartley has no other recorded

17

contact with law enforcement strongly indicates that this type of conduct is aberrational, even for someone as young as him. This lack of criminal history also supports the conclusion that, for him, a "form of punishment other than imprisonment" would more likely "be sufficient to meet the purposes of sentencing." § 5H1.1.

*Lack of Violent Conduct.* There is no evidence that Hartley used a machinegun in a violent manner. He admitted to discharging one before, but there is no evidence he did so with any intention of committing violence or in a manner that endangered others.

## C. The Probation Department's Position.

The court notes that the Probation Department agrees a variance is warranted here, though it did not recommend a non-carceral sentence.

## D. The Sentence and Conditions of Home Detention

Taking all these factors together and evaluating them through the lens of § 3553, the court determines

that a non-carceral sentence, with six months' home detention and with the following strict conditions tailored to Hartley's youth is reasonable.

--Hartley shall maintain his employment and shall continue his studies.

--He shall be restricted to home detention at the residence of his father, except for work, school, church services, medical treatment, attorney visits, and court appearances or to accompany his father on work-related travel, as specifically approved in advance by the Probation Department or his supervising officer. He shall submit to GPS location monitoring technology and comply with its requirements.

--He shall not possess any firearm, destructive device, or other weapon. He shall not use alcohol. He shall not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802 unless prescribed to him by a licensed medical practitioner. He shall submit to random testing for prohibited substances as directed by the Probation Department or his supervising officer.

--He shall have no contact with any person suspected of involvement in the June 2025 burglaries of Pike Tactical or Walter Craig's. He shall have no contact of any type whatsoever with the persons identified at the July 16, 2025 hearing as "Ethan," "Jayden," and "R.W."

19

He shall not use social media in any form for any reason.

--He shall also participate in mental-health treatment program approved by the Probation Department.

--He shall not communicate or interact with someone he knows is engaged in criminal activity and, if he knows someone has been convicted of a felony, he shall not knowingly communicate or interact with that person without first getting the permission of his probation officer.

The sentence is sufficient but not greater than necessary to comply with the statutory purposes of sentencing.  On the one hand, the need to reflect the seriousness of the offense and to provide deterrence counsel in favor of a term of incarceration.  This court takes seriously the danger posed by machineguns and machinegun conversion devices.  They are a hazard to the community, and their increasing popularity is troubling.  On the other hand, though, Hartley is an exceptional case.  His history and characteristics, including his very young age, his ACEs, his education and employment, his lack of criminal history, and his

20

lack of violent conduct demonstrate that a non-carceral sentence is "sufficient to promote the purposes of sentencing." § 5H1.1.  The court must "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."  *Gall*, 552 U.S. at 52 (2007) (citation omitted).  Although his offense is serious, the public is better served by keeping Hartley in the community under strict supervision, where he can continue his employment and his studies, than by sentencing him to a term of incarceration, where his progress will be disrupted or even derailed and where he will likely, because he is at an impressionable age with no criminal history, be harmfully exposed to those who have criminal records and have extensively engaged in criminal behavior.  Moreover, with a non-carceral sentence, the court can substantially control (as outlined above) an exposure to criminal elements, a

21

control that is particularly important in light of his youth, impressionableness, and lack of a criminal record.[5]

The court believes that the sentence it imposes today is much more likely to make Hartley a law-abiding and productive member of society.

*** 

Accordingly, it is ORDERED that:

(1) Defendant Kamryn Hartley's motion for a variance downward (Doc. 79) is granted.

(2) The court now announces a 'proposed' sentence as outlined above, that is, one subject to further

---

5.    The court considered imposing a brief, initial period of incarceration, so that Hartley could see what prison is like and what he has avoided. However, it appears that he was incarcerated for 21 days after his arrest and thus understands--although from only a brief exposure--what prison is like. But, more importantly, the court does not want to interrupt his schooling and employment, two very important factors in his rehabilitation.

22

statements from defendant Hartley, his attorney, and the government in open court.

DONE, this the 4th day of May, 2026.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE

23